IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

WAYNE BRANTLEY, #221 315          *

     Plaintiff,                    *

         v.                      * CIVIL ACTION NO. 2:03-CV-650-F
                                         (WO)
TERRANCE MCDONNELL, *et al.*,     *

     Defendants.                   *

_____

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

Plaintiff, Wayne Brantley ["Brantley"], filed this 42 U.S.C. § 1983 action on June 20, 2003 while incarcerated at the Kilby Correctional Center.[1] Seeking monetary and injunctive relief, Brantley sues Kilby Warden Terrance McDonnell, Kilby Deputy Warden Willie Rowell, Captain Bobby Barrett, Sergeant Ronnie Reeves, Warden's Aid Betty Carr, Chief Classification Officer Judy Holloway, Nurse Vickie Adams, and NaphCare Medical Services, Inc.  Plaintiff alleges that Defendants violated his rights under the Eighth and Fourteenth Amendments when they: (1) failed to acknowledge imminent threats to his safety  from another inmate; (2) failed to provide adequate medical care and treatment for his back pain as well as handicapped equipment and/or housing; and (3) denied him access to the courts and counsel.

---

[1] Brantley is now incarcerated at Hamilton A&I located in Hamilton, Alabama.  This facility is designated for the aged and infirm.

Pursuant to the orders of this court, Defendants filed special reports (Doc. Nos. 18 & 19), including supporting evidentiary material, addressing Plaintiff's claims for relief. The court deems it appropriate to treat the special reports as motions for summary judgment. Upon consideration of these motions, the evidentiary materials filed in support thereof, and Plaintiff's responses thereto (Doc. Nos. 23, 29) the court concludes that the motions for summary judgment should be granted.

## II.  DISCUSSION

A.    *The Claims for Injunctive Relief*

During the pendency of this action, Plaintiff was released from the Kilby Correctional Facility to another correctional facility within the State of Alabama. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the court that Plaintiff is no longer incarcerated at Kilby, his requests for injunctive relief have been rendered moot.

B.    *Standard of Review*

To survive Defendants' properly supported motions for summary judgment, Plaintiff is required to produce some evidence supporting his constitutional claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). He must "go beyond the pleadings and ... designate

'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324.  A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Consequently, when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex Corp.*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987).  Where all the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).  Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact.  *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

C.      *The Failure to Protect Claim*

In his complaint, Plaintiff alleges that inmate Calvin Moore[2] made death threats against him and had another inmate spread rumors that he was a former police officer in an

---

[2]According to Brantley, inmate Moore is a convicted murderer  serving a sentence of life without parole, is mentally challenged, and despite being confined on the segregation unit where prison regulations require that inmates be allowed only one hour of out-of-cell time daily, he remains out of his cell between 6 to 14 hours per day.  (Doc. No. 1.)

effort to provoke inmate attacks on Brantley.  Despite advising Defendants Reeves, Barrett, and Rowell several times, both verbally and in writing, about the threats and rumor-mongering, Plaintiff complains that his allegations were not taken seriously and, essentially, were ignored.  (Doc. No. 1.)

In analyzing an inmate's right to be free from cruel and unusual punishment, including a prison official's failure to protect the inmate from assault by another prisoner, the Supreme Court, in *Farmer v. Brennan*, 511 U.S. 825 (1994), found that:

> Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.  Having incarcerated persons with demonstrated proclivities for antisocial, criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid the government and its officials are not free to let the state of nature take its course.   Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective any more than it squares with evolving standards of decency.  Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

*Id.* at 833 (internal quotations and citations omitted).  In a failure to protect claim a prisoner must show first that the harm he suffered was objectively serious and second that prison officials acted with deliberate indifference.  *Id.* at 834.  Deliberate indifference in the context of a failure to protect claim means that defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837; *see also Marsh v. Butler Co.*, 268 F.3d 1014, 1028 (11th Cir. 2001).  "The known risk of injury must be a 'strong likelihood, rather than a mere

4

possibility' before a guard's failure to act constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11ᵗʰ Cir. 1990) (citations omitted); *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4ᵗʰ Cir. 1997) (unless a prison official actually makes the inference that a substantial risk of serious harm exists, he does not act with deliberate indifference even where his actions violate prison regulations or can be described as stupid or lazy); *see also Lewis v. Richards*, 107 F.3d 549, 553 (7ᵗʰ Cir. 1997) ("the fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety."). An inmate "normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *McGill v. Duckworth,* 944 F.2d 344, 349 (7ᵗʰ Cir. 1991); *overruled in part on other grounds by Farmer*, 511 U.S. 825. An "official's failure to alleviate a significant risk that he should have perceived but did not," does not constitute deliberate indifference. *Farmer,* 511 U.S. at 838.

Defendants acknowledge receiving verbal and written complaints from Brantley that he believed his life was in danger while housed in the segregation unit at Kilby. According to Warden McDonnell, his office received one or two such complaints each week from Plaintiff. Plaintiff's allegations of threats to his safety were then investigated but found to be unsubstantiated. Nonetheless, prison officials placed Brantley in the segregation unit on protective custody on July 12, 2002 where he remained until his transfer to Hamilton A&I.[3]

---

[3]The evidentiary material before the court shows that when Plaintiff arrived at Kilby on or about April 16, 2002 he was placed in general population. Shortly thereafter, Plaintiff complained that inmates were harassing him and moving his wheelchair around. Defendant Barrett relocated Plaintiff to Kilby's

This custody classification mandated that he be on "walk alone, shower alone, and keep safe from all inmates" status.  Defendants also affirm that inmates housed on the segregation unit are not allowed out of their cell unless they are handcuffed behind their back, placed in leg-irons, and escorted by two correctional officers.  (Doc. No. 19, McDonnell, Rowell, & Barrett Affidavits.)

Defendants have presented evidence that prison personnel were aware of, and acted reasonably in response to, Plaintiff's  fear of harm from other prisoners. *See Farmer*, 511 U.S. at 845.  Defendants were not only aware of Plaintiff's written and verbal requests regarding his fear for his safety, but they were also aware of conduct in which Brantley engaged which put him at risk of injury from his fellow  inmates. As a result, Plaintiff was placed on protective custody within less than two months after his arrival at Kilby and remained under this classification status until his transfer from Kilby.  These facts affirmatively show that Defendants were not in any way indifferent to Plaintiff's safety.

Brantly has come forward with no evidence to rebut the defendants' evidence about their response to his complaints.  Because prison officials responded reasonably to the risk

_____

infirmary. While housed at that location, Plaintiff engaged in an extortion scheme with other inmates. After confirming the existence of such scheme, Defendant Barrett moved Brantley on June 6, 2002 to the segregation unit on protective custody status for his protection.  Because of space requirements needed in the segregation unit, Plaintiff was briefly placed on the E-Block Unit, the most secure unit at Kilby, which consists of six single cells designed to house mental health, death row, and violent inmates. Brantley remained on E-Block Unit until July 12, 2002 when his cell there was needed for a high-risk security inmate.  He was moved back to the segregation unit on that date in administrative segregation (protective custody). Despite various manipulations made against both inmates and correctional staff which were designed to achieve his return to E-Block, Brantley remained in the segregation unit on "walk alone, shower alone, and keep safe from all inmates" status because he did not meet the criteria for placement on E-Block.  (Doc. No. 19, Barrett, Carr, and Holloway Affidavits.)

of which they were aware regarding the harm alleged by Brantley, the court concludes that he has failed to demonstrate a violation of his rights under the Cruel and Unusual Punishments Clause. *See Farmer*, 511 U.S. at 844 ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted"); *see also Hamilton v. Leavy*, 117 F.3d 742, 748 (3rd Cir.1997) ("If a prison official responds reasonably to a risk to an inmate's safety, he or she cannot be found to have acted with a sufficiently culpable state of mind."). Here, there is no evidence that Defendants knowingly disregarded an obvious threat or acted or failed to act in a manner precisely for the purpose of placing Plaintiff in harm's way. The court concludes that Defendants' motion for summary judgment on Plaintiff's failure to protect claim is due to be granted.[4]

## D. The Medical Claim

In his complaint, Plaintiff states "I (Wayne Brantley) am in an [sic] wheelchair." He complains, however, that Defendants failed to provide him with "handicapped access

---

[4]The court notes that Plaintiff alleges that Defendant Reeves had him moved back to the segregation unit (from the E-Block United) because "he has something personal against me." (Doc. No. 1.) In support of this allegation Brantley asserts that Sgt. Reeves told him he was a con man and had no credibility. (*Id.*) Plaintiff's conclusory assertion that he was moved back to segregation as part of general scheme of retaliation by Defendant Reeves is insufficient to support a claim under § 1983. *See Adams v. Rice*, 40 F.3d 72, 74-75 (4th Cir. 1994); *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2nd Cir.1987) ("allegations which are nothing more than broad, simple, conclusory statements are insufficient to state a claim under § 1983"); *see also Phillips v. Mashburn,* 746 F.2d 782, 785 (11th Cir.1984) (naked assertions of a conspiracy are insufficient to state a claim under § 1983). Moreover, Plaintiff fails to show why his single cell in the segregation unit, which kept him separate and apart from other inmates, was inferior to a single-cell in the E-Block Unit. He simply and conclusorily asserts that the cell in the E-Block unit was "better-equipped." (Doc. No. 1.) The mere fact that a cell in a prison may be more harsh than another does not implicate Brantley's constitutional rights. *Cf. Montaye v. Haymes*, 427 U.S. 236, 242 (1976)(Transfer to more harsh prison environment not violative of an inmate's constitutional rights.).

facilities/housing from the date in this lawsuit" and denied him adequate medical treatment. Brantley alleges that he fell in his cell and in the shower because his segregation cell is not "handicapped equipped." He also alleges that upon his arrival at Kilby Nurse Adams had him placed in general population which lacked handicap equipment, and he, therefore, had to rely on inmate assistance when he showered or used the bathroom facilities. Brantley conclusorily asserts that Nurse Adams discriminated against because of his handicap and alleges that she lied to Dr. Robbins in order to have him removed from the handicap unit at Kilby. Plaintiff states that he suffers from back pain and that NaphCare's refusal to provide surgery could have resulted in life threatening and/or crippling injuries. (Doc. No. 1.)

        The court has carefully reviewed Plaintiff's medical records. These records contain reports of only two instances where Plaintiff fell while either showering or using the toilet. The first incident, which occurred on Saturday, March 15, 2003, reflects that Brantley received medical treatment for his complaint of falling in the shower. He told medical personnel that after showering, he got out of his wheelchair then slipped and fell due to his wet shoes. Brantley complained of numbness to his left leg and minimal feeling in his right leg. He had limited movement upon standing and walking but was not found to be in any acute distress. Dr. Robbins was notified of the incident as well as Brantley's condition. He advised medical personnel to administer 800 mg. of Motrin and informed Brantley to sign up for sick call on Monday, March 17, 2003. Medical staff then released Plaintiff to correctional officials. The second incident occurred on June 29, 2003 while Brantley was in his cell. While standing to urinate, Brantley fell and hit his chest on a locker box and his

8

head on the bunk.  He was found lying on his side between the bed and the wall.  Medical personnel assessed Brantley and found him alert and oriented "x3."  No redness, swelling, or deformity to Plaintiff's back or chest was noted. He was able to perform motions within his normal range of motion and no apparent injuries were noted. Brantley received Tylenol and was to follow up with medical personnel the next day for further evaluation.  (Doc. No. 18, Plaintiff's Medical Records.)

Brantley's medical records are devoid of any other incidents similar to those which occurred on  March 15, 2003 and June 29, 2003.  His medical records, however, are replete with evidence of timely and responsive medical and mental health care and treatment.   The medical records also reflect Defendants' awareness of Plaintiff's chronic/long-term care health issues which include bipolar disorder, degenerative/crushed discs (L3, L4, L5), sciatica, and chronic pain.[5]  These conditions were listed in his medical file in April and June 2002.  (Doc. No. 18, Plaintiff's Medical Records.)

Other than complaints Plaintiff made upon his arrival at Kilby concerning inmates hiding his wheelchair at night thereby hindering his ability to get up and use the restroom, his medical records are devoid of any evidence that he ever requested handicap accessories and/or equipment or that any such items were necessary for Plaintiff's care, safety and well-being.  Further, there is no medical documentation that Brantley required either  a wheelchair or special equipment within his cell while at Kilby.  A handicap shower chair is available on

---

[5]According to Plaintiff's medical records, a car fell on him in December 2001. (Doc. No. 18, Plaintiff's Medical Records.)

Kilby's segregation unit but is not assigned to any one particular inmate. (Doc. No. 18, Plaintiff's Medical Records, Dr. McLane Affidavit, Doc. No. 19, McDonnell Affidavit.)

As an inmate sentenced to confinement, Plaintiff is entitled to receive treatment for his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Failure to provide treatment, when indicating a "deliberate indifference to serious medical needs of prisoners," results in "the 'unnecessary and wanton infliction of pain,'...proscribed by the Eighth Amendment." *Id.* at 104; *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985). An inadvertent failure to provide adequate medical care, however, cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 105-06 (footnote omitted). To state a valid claim of medical mistreatment under the Eighth Amendment, a prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106. Deliberate indifference is shown by establishing that the defendant had actual knowledge or awareness of an obvious risk to a plaintiff's serious medical need and failed to take steps to abate that risk. *See Farmer*, 511 U.S. at 834.

In *Farmer*, the Court noted that "deliberate indifference l[ies] somewhere between the poles of negligence at one end and purpose or knowledge at the other . . ." *Id*. 511 U.S. at 836. A claim for inadequate medical care under the Eighth Amendment will not succeed unless the treatment rendered was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers v. Evans*, 792

10

F.2d 1052, 1058 (11ᵗʰ Cir. 1986). Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *Id*. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Under this standard, a prison or medical official does not act with indifference by providing medical care that is different from that which an inmate desires. *See Hamm v. De Kalb County*, 774 F.2d 1567 (11ᵗʰ Cir. 1985). Further, a showing of negligence, neglect, or medical malpractice is insufficient to establish a constitutional violation. *Rogers*, 792 F.2d at 1058; *see also Fielder v. Bosshard*, 590 F.2d 105, 107 (5ᵗʰ Cir. 1979).

A claim about a failure to provide immediate or emergency medical attention must involve medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176 (11ᵗʰ Cir. 1994). In contrast, delay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute an Eighth Amendment violation. *Id.*

> The "seriousness" of an inmate's medical needs also may be decided by reference to the effect of delay in treatment.... Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." ... An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that "the tolerable length of delay in providing medical attention depends

11

> on the nature of the medical need and the reason for the delay."
> *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir.1994)
> (emphasis added). Consequently, delay in medical treatment
> must be interpreted in the context of the seriousness of the
> medical need, deciding whether the delay worsened the medical
> condition, and considering the reason for delay.

*Id*. at 1188-89.

Here, the medical records affirmatively reflect that Plaintiff received responsive and appropriate health care during his incarceration at Kilby.   No evidence exists tending to show that Defendants demonstrated deliberate indifference towards Plaintiff's medical needs by intentionally or deliberately delaying or withholding necessary medical treatment or equipment, or by interfering with his ability to access such treatment and/or equipment. While Plaintiff alleges that Defendants put off his request for back surgery which could have left him with serious pain or permanent injury, the undisputed medical records before the court show that Brantley refused to undergo pre-surgery diagnostic procedures necessary for purposes of assessing his condition and potential treatment options. Consequently, any delay in receiving a work-up for possible surgery was due to Plaintiff's own actions.  Moreover, there is no medical evidence that Brantley's condition required more immediate care and/or that any delay in receiving surgery caused irreparable harm.   The court also finds that Plaintiff, at most, suffered isolated instances of minor injury from falls as a result of his back condition, but he fails to show that he suffered any serious harm.  There has been no showing that a lack of unspecified handicap equipment  or facilities would have prevented the incidents about which Plaintiff  complains, that the failure to have any such equipment

deprived him of any basic human need, or that any such equipment was medically necessary. *See Hudson v. McMillian,* 503 U.S. 1, 8-9 (1992); *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). Brantley also fails to show that Defendants were deliberately indifferent to his serious medical needs. *Farmer,* 511 U.S. at 834. Rather, Defendants responded to Plaintiff's numerous requests for medical care and treatment in addition to regular monitoring of his mental health. (*See* Doc. No. 18, Plaintiff's Medical Records, Dr. McLane Affidavit.) The undersigned, therefore, finds that Plaintiff fails to present evidence demonstrating that Defendants in any way disregarded a substantial risk to his health by purposely delaying or denying him adequate medical care and treatment. Allegations that more could have been done for his medical complaints or a disagreement with what was actually done, will not support Plaintiff's claims under § 1983. *Hamm,* 774 F.2d at 1575.

In light of the foregoing, the court finds that Brantley has not produced significant probative evidence in support of his complaint to defeat Defendants' dispositive motions on his claim of inadequate medical care. *See Celotex Corp.,* 477 U.S. at 323; *Anderson,* 477 U.S. at 248-49. His opposition to Defendants' dispositive motions simply reiterates the submissions presented in his complaint and merely claims that Defendants lied in their affidavits. Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). Because Brantley fails to present sufficient evidence to support this Eighth Amendment claim, Defendants' motions for summary judgment are due to be granted. *See Farmer,* 511 U.S. at 834.

*E. The Access to Court/Counsel Claim*

Plaintiff complains that Defendant Carr hindered the ability of several attorneys to visit him in prison. Specifically, when attorneys would call the prison in an effort to arrange a meeting with Brantley, he contends that Defendant Carr repeatedly told attorneys that he had no credibility and that they should not visit him in prison. Plaintiff further contends in conclusory fashion that "Ms. Carr has deprived me of my rights to have legal access to the courts to challenge a criminal conviction." (Doc. No. 1.)

Betty Carr is the Warden's Secretary. She schedules all appointments and interviews for inmates confined at Kilby. Defendant Carr affirms that she scheduled attorney visits on June 27, 2002, and July 3, 10, 12, &19, 2002 for attorney George Beck to meet with Plaintiff. According to Defendant Carr:

> Attorney Beck asked questions about how Inmate Brantley would be allowed to pay his fees from his prison account which were for large amounts of money. Attorney Beck stated he had been informed that Brantley stated he would be receiving extremely large sums of money on the death of his wife. I did tell Mr. Beck that Inmate Brantley had not received any such funds at Kilby from any insurance settlements on his wife. I explained that I had doubts about Inmate Brantley's credibility based on various comments Inmate Brantley had been making to me, other Kilby employees and other inmates at this facility.

> Attorney Beck sent in or brought papers to Inmate Brantley that had to be notarized giving him power of attorney over his "insurance settlements" on his wife's death and disbursing large sums of money to his attorneys. Attorney Beck called to schedule another appointment with Inmate Brantley. Prior to his visit Attorney Beck gave me copies of documents he had printed off the internet regarding Inmate Brantley being a con-artist and running scams on people. . . . With <u>no</u> documentation or money being received to back up Inmate Brantley's story that he would be receiving Millions of dollars in settlements on his wife's death in the World Trade Center and information received

14

through internet documents, Attorney Beck withdrew his representation of
Inmate Brantley.

I scheduled an attorney appointment for Attorney Tommy Goggins for 10-30-
02 which was cancelled by Mr. Goggins.

(Doc. No. 19, Carr Affidavit.)  Defendant Carr affirms that she has no other knowledge of

other lawyers calling to schedule appointments with Plaintiff and denies hindering his ability

to arrange visits with attorneys.  (*Id.*)

In his opposition, Brantley maintains that Defendant Carr perjured herself and

reiterates his contention that she tried to impede his ability to get into court and visit with his

attorneys. (Doc. No 23.)    Plaintiff's conclusory allegation that Defendant Carr interfered

with his ability to access the courts in order to challenge a criminal conviction finds no

support in the record.  He fails to allege any specific facts showing that he suffered prejudice

to any pending or contemplated direct appeals, habeas corpus applications, or non-frivolous

civil rights claims. Consequently, there is nothing before the court which indicates that the

conduct about which Plaintiff complains hindered his efforts to pursue  non-frivolous legal

claims and, therefore, he has failed to show  injury. *See Lewis v. Casey,* 518 U.S. 343, 349-55

(1996) (holding that the "actual injury"  an inmate must demonstrate is a hindrance to his

efforts to pursue a nonfrivolous legal claim). Similarly, Plaintiff has failed to allege specific

facts demonstrating that the conduct and/or actions of Defendant Carr resulted in a denial of

his Sixth Amendment right to counsel. *See Procunier v. Martinez,* 416 U.S. 396, 419 (1974),

*overruled in part on other grounds by Thornburgh v. Abbott,* 490 U.S. 401 (1989) ( holding

that "inmates must have a reasonable opportunity to seek and receive the assistance of

attorneys" and that "[r]egulations and practices that unjustifiably obstruct the availability of

professional representation or other aspects of the right of access to the courts are invalid."").

Brantley's conclusory allegations of a violation of his constitutional rights do not create a

genuine issue of material fact which precludes the grant of summary judgment on this claim.

*Celotex*, 477 U.S. at 322.  Because Plaintiff has failed to produce sufficient evidence to

support this constitutional claim, the undersigned concludes that Defendants are entitled to

summary judgment.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Plaintiff's request for injunctive relief be dismissed as moot;

2.  The motions for summary judgment filed by Defendants (Doc. Nos. 18 & 19) be

GRANTED;

3.  Judgment be ENTERED in favor of Defendants and against Plaintiff;

4.  This case be dismissed with prejudice; and

5.  The costs of this proceeding be taxed against Plaintiff.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said

Recommendation on or before **August 11, 2005.**  Any objections filed must specifically

identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous,

conclusive or general objections will not be considered by the District Court.  The parties are

advised that this Recommendation is not a final order of the court and, therefore, it is not

appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 28th day of July, 2005.

_____/s/Charles S. Coody_____
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE